## Commonwealth ex rel. Butler, Appellant,
### *v.* Rundle.

Submitted April 23, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, BOK, EAGEN and O'BRIEN, JJ.

*Thomas A. Butler*, appellant, in propria persona.

No argument was made nor brief submitted for ap-
pellee.

OPINION BY MR. JUSTICE BOK, May 21, 1962:

Appellant was convicted of murder in the first de-
gree and sentenced to life imprisonment. No appeal
was taken. He now appeals from the dismissal with-
out a hearing of his petition for a writ of habeas corpus
in the Court of Common Pleas of Delaware County.

The case is submitted to us on appellant's brief without oral argument.

A hearing is not required when there is no issue of fact to be decided or when the facts averred by relator, even if believed, are insufficient to warrant granting the writ of habeas corpus. *Commonwealth ex rel. Bishop v. Claudy,* 373 Pa. 523, 97 A. 2d 54 (1953). Habeas corpus is no substitute for an appeal or for a writ of error or for a motion for a new trial or for the correction of trial errors, but rather lies to correct void or illegal sentences or an illegal detention, or where the record shows a trial or sentence or plea so fundamentally unfair as to amount to a denial of due process or other constitutional rights, or where for other reasons the interests of justice imperatively required it. *Commonwealth ex rel. Elliott v. Baldi,* 373 Pa. 489, 96 A. 2d 122 (1953).

Appellant first alleges a denial of due process in the prosecutor's introducing a revolver other than the one he said in his confession was the one he used, and from that he reasons that the suppression of the revolver mentioned in the confession demonstrates that a ballistics test would show his revolver to be not the murder weapon. In his confession appellant identified a ".32 calibre, S and W, CTGE., serial No. 376130", as the weapon he used. The revolver introduced as Commonwealth's exhibit C-51 was first described by a Commonwealth witness as a "Harrington and Richardson revolver" but later it was described by another witness as a "S. & R. Harrington and Richardson revolver". Regardless of what it was called the revolver was identified at the trial as the one fished out of the culvert indicated by appellant and on direct examination at the trial appellant identified the revolver introduced at the trial and which had been shown to be the murder weapon as his own and the one that he used to kill the victim.

Appellant further alleges denial of due process of law in the introduction of unmarked bullets as being the cause of death. Four bullets, identified as having been fired from appellant's revolver, were taken from the body, three from the chest area, and one from the left shoulder, this last one having entered the right temple and travelled diagonally down and through the brain. This was the only bullet at trial which, because of the bullet's irregular shape, specifically identified the wound it caused, but the other three were identified as having caused the other three wounds. No objection was made to their introduction.

These contentions are not properly raised in a habeas corpus proceeding. In any event, the record demonstrates they are without merit.

Appellant contends that he was inadequately represented by counsel. A reading of the trial record belies this, as does the fact that even though appellant admitted the killing during the course of a robbery he received the lightest sentence possible, life imprisonment. The judge below correctly categorized this allegation as "shocking in its irresponsibility and consummate ingratitude." Appellant can point to no instance where his counsel erred.

Appellant finally complains that his confession was procured involuntarily, through threats to implicate his wife. For this he relies on the testimony of the detective who said to him at the time of his arrest: "There is no use of taking your wife," and: "You can save us a lot of trouble, son, if you give us the gun." However, on the stand appellant admitted that his confession was voluntary, that no force or threats were used, and that his only complaint was that he was just under a mental strain because he was emotionally upset from the killing. On direct examination he admitted the shooting and he began discussing with the police what he had done almost at once after his arrest.

His own testimony shows that the police did not act improperly. He was arrested in a sleepless condition at 2:30 in the morning. The Philadelphia police turned him over to the Delaware County authorities about 10:00 in the morning. He had been offered food but could not eat. He did eat the food offered by the Delaware County authorities before he was questioned. They also offered him food in the afternoon. Before signing his confession around 1:00 P.M., he voluntarily re-enacted the crime. He admitted that the confession is true. The total time elapsed between arrest and the time he signed the transcribed confession was ten and a half hours, which included his transferral from the Philadelphia to Delaware County authorities and a re-enactment of the crime. At no time during the trial did he complain that his confession was in any way involuntary.

"Where the petition or application itself, or where the record upon which it is based, or both together, fail to clearly make out a case entitling a relator to the relief afforded by habeas corpus, a hearing is not necessary." *Commonwealth ex rel. Elliott v. Baldi,* supra (373 Pa. 489) at 494-5.

This case is controlled by the language in *Commonwealth ex rel. Bolish v. Banmiller,* 396 Pa. 129, 131, 151 A. 2d 480 (1959): "Appellant complains that his petition for the writ was denied without a hearing after a rule to show cause had issued and an answer had been filed by the Commonwealth. This is proper when the allegations of the petition are refuted by the trial or court record, which may not be impeached in a collateral proceeding until the contrary competently and affirmatively appears."

Order affirmed.